1
2
3
4
5
6
7

8              IN THE UNITED STATES DISTRICT COURT

9             FOR THE EASTERN DISTRICT OF CALIFORNIA

10   LESLIE JAMES JONES,

11              Plaintiff,              No. CIV S- 04-1933 DFL GGH P

12        vs.

13   LIEUTENANT E. SANDY, et al.,

14              Defendants.            FINDINGS AND RECOMMENDATIONS

15   _____/

16   Introduction

17              Plaintiff, a state prisoner proceeding pro se, seeks relief pursuant to 42 U.S.C. §

18   1983.  Pending before the court is defendants' August 15, 2005 motion to dismiss, pursuant to

19   nonenumerated Fed. R. Civ. P. 12(b) and Fed. R. Civ. P. 12(b)(6), to which plaintiff has filed an

20   opposition.

21   Plaintiff's Allegations

22              This action proceeds on an amended complaint,[1] filed on October 14, 2004,

23   against ten (10) defendants: Lt. E. Sandy; CCI Hughes; Capt. W. A. Rodriguez; C/O M. Mabon;

24   _____
          [1] The original "Citizen's Complaint" was filed in the Northern District on May 7, 2004,
25   construed as a prisoner civil rights action under 42 U.S.C. § 1983, transferred to this district by
     order filed in the Northern District on August 31, 2004, and filed in the Eastern District, this
26   court, on September 16, 2004.

                                    1

Sgt. N. Justin; Assoc. Wardens Johns and C.D. Brown; Appeals Coordinators S. Cervantes and T. Dickinson; and Secretary Roderick Q. Hickman.

Plaintiff alleges that defendant Sandy assessed plaintiff 91 days of time credit even though the time for holding a hearing on his serious Rules Violation Report (RVR) had run out by some 16 days, and plaintiff never requested a hearing postponement as wrongly stated by defendant Sandy.  Complaint (Cmpl.), p. 3.  Upon his review of the revised CDC 115, plaintiff determined that defendant Sandy had changed the findings and inappropriately ordered that plaintiff be required to drug test for one year even though CDC policy does not consider pruno a drug or narcotic.  Cmpl., pp. 3-4.

On July 26, 2002, plaintiff filed a 602 inmate grievance challenging defendant Sandy's actions in appeal CSP # 02-01627.  Defendant Sandy was aware plaintiff was in the process of settling a civil complaint against the CDC.  Cmpl., p. 4.

Upon filing the grievance, defendant Cervantes caused plaintiff numerous delays. In a second level appeal response, plaintiff was told that his appeal had been returned on December 10, 2002; however, plaintiff never received the appeal.  After many months of disputing this issue, on August 14, 2003, plaintiff wrote an appeal requesting a copy of appeal # 02-01627 stamped "Treat as Original," so that plaintiff could receive a third level director's review, which appeal was denied on August 16, 2003.  On August 22, 2003, defendant Cervantes asked plaintiff to withdraw the appeal against defendant Sandy and asked plaintiff to talk with Sandy.  Plaintiff stated that he had tried to talk to Sandy but she had been very disrespectful toward him and plaintiff refused to withdraw the appeal.  Cmpl., p. 4.

Four days later, defendant Mabon searched plaintiff's cell while defendant Sandy was in plaintiff's building housing unit, confiscating nothing from plaintiff's cellmate but taking all of plaintiff's doctor-ordered blood pressure medication and plaintiff's hygiene items.  When defendant Mabon was asked by non-defendant Sgt. E. Martin why plaintiff's institutionally authorized medications and hygiene items were being confiscated, Mabon replied that a female

supervisor, whose name she did not know, had told her to take the items.  About 45 minutes later, an officer told plaintiff that Sgt. Martin had told him to tell plaintiff that defendant Sandy had ordered the property taken and that plaintiff would have to talk to her (Sandy) to get his property back.  On the same evening, August 26, 2003, plaintiff was taken to the clinic due to extremely high blood pressure resulting from the stress of losing his personal property and having no medication to treat himself.  Cmpl., pp. 4-5.

Defendant Sandy violated plaintiff's Fifth Amendment due process rights by violating time restraints and assessing plaintiff the 91 days and altering the RVR.  She violated his Fourth Amendment rights by ordering his personal property confiscated in retaliation for the grievances plaintiff filed against her, his Fourteenth Amendment rights by ordering drug testing for a year, his Eighth and Fourteenth Amendment rights by being deliberately indifferent to plaintiff's serious medical needs in confiscating his blood pressure medications.  Cmpl., p. 5.

Defendant Cervantes violated plaintiff's Fifth Amendment rights by attempting to intimidate plaintiff into dropping appeal no. 02-01627 against defendant Sandy, by holding up his appeal for several months, by refusing to provide a copy of the appeal and stamping it "Treat as Original" so plaintiff could exhaust the appeal.  Defendant Cervantes knew that plaintiff had settled a CDC civil complaint in May, 2003 and had another pending, therefore continuously delaying plaintiff's grievance.  Cmpl., p. 5.  Defendant also repeatedly requested a "mental health assessment form" from plaintiff which he knew plaintiff could not provide as defendant Sandy never did such a report and never asked for one as required, further impeding processing of the appeal.  Cmpl., p. 6.

Defendant Mabon violated plaintiff's Fifth, Eighth and Fourteenth Amendment rights by confiscating plaintiff's medications and personal property.  Cmpl., p. 6.  Defendants Sandy, Cervantes and Mabon acted in retaliation against plaintiff.  Id.

Defendant Dickinson violated plaintiff's Fifth Amendment due process rights by refusing to stamp his appeal "Treat as Original," denying plaintiff access to the third level appeal

1  review.  Id.  Defendant Justin violated plaintiff's due process rights by falsely reporting in an

2  April 11, 2004 memorandum that plaintiff had told Justin that he (plaintiff) had received his

3  confiscated lotions back.  Id.  Defendant Brown violated plaintiff's due process rights by denying

4  his appeal on April 11, 2004.  Id.

5         Defendant Hughes retaliated against plaintiff for his having filed a civil complaint

6  against Salinas Valley State Prison (SVSP) staff where Hughes worked and where the defendants

7  in that action were her friends, as she told plaintiff in December of 2003 in an attempt to

8  intimidate plaintiff at his annual review.  Cmpl., p. 6.  Defendant Hughes had been a sergeant at

9  SVSP where she and plaintiff had met.  Id.  She and plaintiff both went to CSP-Solano in 2000

10  and, soon after, she became plaintiff's counselor.  In May, 2003, plaintiff settled a civil complaint

11  against staff at Pelican Bay State Prison (PBSP), while he was at CSP-Solano.  Id.  Plaintiff had

12  in his possession confidential files of officers which the federal court had ordered be given to

13  plaintiff.  Cmpl., p. 7.  Upon settlement of plaintiff's PBSP case, plaintiff took the files to a

14  captain because they had been marked not to be reviewed by anyone under the rank of captain.

15  Plaintiff was told to take them to his counselor, who was Hughes.  When defendant Hughes saw

16  the files, on May 21, 2003, she became very upset, stating: "Where did you get these, look at this,

17  this is everything, no court can give you these."  Cmpl., p. 7.

18         Defendant Hughes then retaliated against plaintiff by refusing to process

19  plaintiff's family visit application, stating that plaintiff had an "R-suffix" conviction.  Id.

20  Plaintiff showed defendant Hughes documentation that proved he had never been convicted of a

21  sex offense, but she still refused to process his application.  On November 10, 2003, plaintiff

22  filed an inmate grievance against defendant Hughes, Appeal No. SOL-03-03168, with regard to

23  her actions concerning his family visits, which was finally exhausted through the third level, on

24  May 3, 2004.  Id.  In retaliation, defendant Hughes wrote a frivolous CDC 115, making a number

25  of false allegations against plaintiff and on May 3, 2004, plaintiff was placed in ad seg because

26  Hughes had released sensitive information about a past arrest of plaintiff's where plaintiff was

housed.  Id.  Plaintiff stated on the CDC 115 that plaintiff had threatened her and other staff

during a Classification Committee Review on April 8, 2004, of which defendant Rodriguez was

the chair person.  Id.  Plaintiff remained in ad seg for four months, from May 3, 2004 until

August 2, 2004 with no hearing on the CDC 115 RVR written by defendant Hughes.  Cmpl., p. 8.

Defendant Sandy had vindictively signed the lock-up order placing plaintiff in ad seg.  Id.

Defendants Sandy and Hughes violated plaintiff's constitutional rights by failing to hold a

hearing on the RVR for 67 days and, on July 26, 2004, plaintiff was found not guilty.  Id.

Notwithstanding, plaintiff was kept in ad seg until September 2, 2004, when all other inmates

found not guilty are immediately released.  Id.

Moreover, defendant Hughes labeled plaintiff a rapist in an effort to endanger his

life and in the exercise yard by releasing sensitive information to inmates, knowing that plaintiff

had never been convicted of sex-related offenses.  Id.

On May 12, 2004, defendant Rodriguez held a committee hearing in ad seg telling

plaintiff  "we made a mistake."  Id.  Although defendant Rodriguez had the authority to remove

plaintiff from ad seg, he did not do so.  Rodriguez knew that plaintiff had never threatened staff

at the April 8, 2004 committee hearing but refused to attend the July 26, 2004 RVR hearing.

Nevertheless, defendant Rodriguez did stipulate to the Senior Hearing Officer that plaintiff had

not threatened committee meetings; had he so informed the ad seg committee on May 12, 2004,

plaintiff would have been released from ad seg.  Cmpl., pp. 8-9.  Rodriguez, by his actions

covering up for defendants Hughes' and Sandy's retaliatory actions violated plaintiff's

constitutional rights under the Fifth, Eighth and Fourteenth Amendments.  Cmpl., p. 9.

Defendant Johns, also present at the May 12, 2004 ad seg hearing told plaintiff

and defendant Rodriguez, "we have to clean this mess up."  Id.  Defendant Johns, therefore, also

violated plaintiff's rights under the Fifth, Eighth and Fourteenth Amendments by allowing

plaintiff to be detained in ad seg for four months.  Id.

\\\\\

Defendant Brown also violated plaintiff's constitutional rights on July 21, 2004, when as chair person of the ad seg committee, he told plaintiff, "I want you out of my institution," putting plaintiff up for transfer in order to cover up the entire incident of plaintiff's being held in ad seg without a hearing and when he had done nothing wrong.  Id.  Defendant Brown conspired with defendants Johns and Rodriguez to cover up the incident and in retaliation for plaintiff's two prior lawsuits and using the grievance process against defendants Sandy and Hughes.  Id.  Defendant Brown also interfered with plaintiff's attempt through a certified letter to inform the warden about his being held wrongly in ad seg.  Id.

On May 14, 2004, plaintiff received a second RVR CDC 115 from defendant Hughes that was altered from the original one written on April 20, 2004, for which plaintiff had been placed in ad seg, by having the phrase "inmate Jones had been arrested for rape" removed.  Cmpl., pp. 9-10.

Defendant Hickman, on February 17, 2004, issued a memorandum to all employees entitled "Zero Tolerance regarding 'the Code of Silence.'" Cmpl., p. 10.  Defendant Hickman failed to enforce this memorandum by investigating, training and counseling CDC employees.  As a result, defendant Hickman has been deliberately indifferent to plaintiff's safety and constitutional rights.  Id.  All the other defendants actively participated in the "Code of Silence" and defendant Hickman failed to protect plaintiff from the systemic violations of his constitutional rights.  Cmpl., pp. 10-11.  In addition to inmate appeal nos. 02-01627, which plaintiff claims was unjustly rejected at the institutional level, and appeal no. 03-03168 which was exhausted to the third level, as set forth above, plaintiff also claims that appeal no. 04-00776 was exhausted to the third level.  Cmpl., p. 2.

Plaintiff seeks injunctive relief in the form of reinstatement of family visits and restoration of the 91 days assessed against him as well as money damages.

\\\\\

\\\\\

1  Motion to Dismiss

2  *Failure to State a Claim - Legal Standard*

3  A complaint should not be dismissed under Rule 12(b)(6) unless it appears

4  beyond doubt that plaintiff cannot prove any set of facts consistent with his allegations which

5  would entitle him to relief.  NOW, Inc. v. Schiedler, 510 U.S. 249, 256, 114 S. Ct. 798, 803

6  (1994); Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S. Ct. 2229, 2232 (1984), citing Conley

7  v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957), Cervantes v. City of San Diego, 5 F.3d

8  1273, 1274-75 (9th Cir. 1993).  Dismissal of the complaint, or any claim within it, "can be based

9  on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a

10  cognizable legal theory."  Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990);

11  see also Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir. 1984).

12  In considering a motion to dismiss, the court must accept as true the allegations of

13  the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740, 96 S.

14  Ct. 1848, 1850 (1976), construe the pleading in the light most favorable to the party opposing the

15  motion and resolve all doubts in the pleader's favor.  Jenkins v. McKeithen, 395 U.S. 411, 421,

16  89 S. Ct. 1843, 1849, reh'g denied, 396 U.S. 869 (1969).  The court will "'presume that general

17  allegations embrace those specific facts that are necessary to support the claim.'"  NOW, 510

18  U.S. at 256; 114 S. Ct. at 803, quoting Lujan v. Defenders of Wildlife, 504 U.S.555, 561, 112 S.

19  Ct. 2130, 2137 (1992).  Moreover, pro se pleadings are held to a less stringent standard than

20  those drafted by lawyers.  Haines v. Kerner, 404 U.S. 519, 520, 92 S. Ct. 594, 596 (1972).  A

21  motion to dismiss for failure to state a claim should not be granted unless it appears beyond

22  doubt that plaintiff can prove no set of facts in support of the claim that would entitle him to

23  relief.  See Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S. Ct. 2229, 2232 (1984), citing

24  Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957); see also Palmer v. Roosevelt

25  Lake Log Owners Ass'n, 651 F.2d 1289, 1294 (9th Cir. 1981).

26  \\\\\

The court may consider facts established by exhibits attached to the complaint. Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987).  The court may disregard allegations in the complaint if they are contradicted by facts established by exhibits attached to the complaint.  Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987). Furthermore, the court is not required to accept as true allegations that contradict facts which may be judicially noticed.  Mullis v. United States Bankruptcy Ct., 828 F.2d 1385, 1388 (9th Cir. 1987), cert. denied, 486 U.S. 1040 (1988).  The court need not accept as true conclusory allegations, unreasonable inferences, or unwarranted deductions of fact.  Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir.), cert. denied, 454 U.S. 1031 (1981).  The court need not accept legal conclusions "cast in the form of factual allegations."  Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir.), cert. denied, 454 U.S. 1031 (1981).

A pro se litigant is entitled to notice of the deficiencies in the complaint and an opportunity to amend, unless the complaint's deficiencies could not be cured by amendment.  See Noll v. Carlson, 809 F. 2d 1446, 1448 (9th Cir. 1987).

*Defendants' Argument*

Defendants first move for dismissal, pursuant to nonenumerated Fed. R. Civ. P. 12(b), contending that plaintiff failed to exhaust his administrative remedies prior to bringing this action with respect to his claims against defendants Sandy, Rodriguez, Mabon, Justin, Johns, Cervantes, Dickinson, Brown and Hickman.  As to the remaining defendant, Hughes, defendants allege that plaintiff has not exhausted certain of his claims against this defendant before bringing this lawsuit.

Defendants also move for dismissal under Fed. R. Civ. 12(b)(6) for plaintiff's failure to state a claim against defendants Hickman, Cervantes, Dickinson, Sandy, Justin and Brown.  Among the grounds defendants raise under their 12(b)(6) motion is a jurisdictional one, contending that plaintiff's allegations with respect to defendant Sandy, as well as defendants Cervantes and Dickinson, should be dismissed as he seeks restoration of his 91 days of good time

credit with respect to the actions of these defendants.  As jurisdiction is a threshold issue, the court reaches this ground first and finds that as to this relief sought by plaintiff, plaintiff's claims must be dismissed against these defendants.

To the extent that plaintiff seeks money damages with respect to his claim that defendant Sandy violated his due process rights in assessing him 91 days due to an untimely hearing on a Rules Violation Report, for which he does not demonstrate that the findings have yet been invalidated, these claims are <u>Heck</u>-barred.  In <u>Heck v. Humphrey</u>, 512 U.S. 477, 114 S. Ct. 2364 (1994), an Indiana state prisoner brought a civil rights action under § 1983 for damages. Claiming that state and county officials violated his constitutional rights, he sought damages for improprieties in the investigation leading to his arrest, for the destruction of evidence, and for conduct during his trial ("illegal and unlawful voice identification procedure").  Convicted on voluntary manslaughter charges, and serving a fifteen year term, plaintiff did not seek injunctive relief or release from custody.  The United States Supreme Court affirmed the Court of Appeal's dismissal of the complaint and held that:

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.  A claim for damages bearing that relationship to a conviction or sentence that has <u>not</u> been so invalidated is not cognizable under 1983.

<u>Heck</u>, 512 U.S. at 486, 114 S. Ct. at 2372.  The Court expressly held that a cause of action for damages under § 1983 concerning a criminal conviction or sentence cannot exist unless the conviction or sentence has been invalidated, expunged or reversed.  <u>Id.</u>

In <u>Edwards v. Balisok</u>, 520 U.S. 641, 117 S. Ct. 1584 (1997), the Supreme Court held that <u>Heck</u> applies to challenges to prison disciplinary hearings when the nature of the challenge to the procedures could be such as necessarily to imply the invalidity of the judgment.

1   Edwards rejected the Ninth Circuit's holding in Gotcher v. Wood, 66 F.3d 1097, 1099 (9th Cir.

2   1995) that a claim challenging only the procedures employed in a disciplinary hearing is not

3   barred by Heck.

4              As for plaintiff's seeking restoration of his time credits by way of a civil rights

5   action, defendants are correct that plaintiff must proceed by way of a petition for writ of habeas

6   corpus.  The Supreme Court has recently stated:

> § 1983 must yield to the more specific federal habeas statute with
> its attendant procedural and exhaustion requirements, where an
> inmate seeks injunctive relief challenging the fact of his conviction
> or the duration of his sentence.  See Preiser v. Rodriguez, 411 U.S.
> 475, 489, 93 S. Ct. 1827 [] (1973).  Such claims fall within the
> 'core' of habeas corpus and are thus not cognizable when brought
> pursuant to § 1983.  Ibid.  By contrast constitutional claims that
> merely challenge the conditions of a prisoner's confinement,
> whether the inmate seeks monetary or injunctive relief, fall outside
> of that core and may be brought pursuant to § 1983 in the first
> instance.  See Muhammad v. Close, 540 U.S.749 , 750, 124 S.Ct.
> 1303, 1304 [] (2004) (per curiam); Preiser, supra, at 498-499, 93 S.
> Ct. 1827.

14   Nelson v. Campbell, 541 U.S. 637, 124 S. Ct. 2117, 2122 (2004):

15              As defendants observe (MTD, p. 13), the Supreme Court explicitly precludes

16   plaintiff's claim for relief in the form of a restoration of his time credits by way of a civil rights

17   action:

> when a state prisoner is challenging the very fact or duration of his
> physical imprisonment, and the relief he seeks is a determination
> that he is entitled to immediate release or a speedier release from
> that imprisonment, his sole federal remedy is a writ of habeas
> corpus.

21   Preiser, supra, 411 U.S. at 500, 93 S. Ct. at 1841.

22              Plaintiff's effort to counter defendants' contention is to state that he is not asking

23   to have his sentenced shortened, rather only seeking to have his original sentence reinstated.

24   Opp.,p. 26.  He reiterates that the sanction was imposed untimely and "illegally taken."  Opp., p.

25   3.  Plaintiff's argument is unavailing, as the holding of Preiser speaks specifically to plaintiff's

26   explicit claim, i.e., state prisoners deprived of good conduct time credits allegedly without due

1   process.  All of plaintiff's claims related to this alleged due process violation, which includes his

2   claims against defendants Sandy as to the due process violation itself and his claims with respect

3   to the processing of the appeals related to this matter against defendants Cervantes and

4   Dickinson, must be dismissed.

5          As to defendants' claim that plaintiff has failed to exhaust his administrative

6   remedies as to the alleged due process violation by defendant Sandy, the court will not reach this

7   contention, as the undersigned has found that the court lacks jurisdiction over plaintiff's

8   allegations related to the assessment of time credits against him.  The court will now address

9   defendants' arguments related to the failure to exhaust administrative remedies with respect to

10  plaintiff's claims against the defendants and other claims.

11          *Failure to Exhaust* - *Legal Standard under Non-Enumerated Fed.R.Civ.P. 12(b)*

12          In a motion to dismiss for failure to exhaust administrative remedies under non-

13  enumerated Rule 12(b) of the Federal Rules of Civil Procedure, defendants "have the burden of

14  raising and proving exhaustion."  Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003).  The

15  parties may go outside the pleadings, submitting affidavits or declarations under penalty of

16  perjury, but plaintiff must be provided with notice of his opportunity to develop a record.  Wyatt

17  v. Terhune, 315 F.3d at 1120 n.14.  The court provided plaintiff with such fair notice by order

18  filed on May 4, 2005.

19          Should defendants submit declarations and/or other documentation demonstrating

20  an absence of exhaustion, making a prima facie showing, plaintiff has a burden of production to

21  refute that showing, although.  Plaintiff may rely upon statements made under the penalty of

22  perjury in the complaint if the complaint shows that plaintiff has personal knowledge of the

23  matters stated and plaintiff calls to the court's attention those parts of the complaint upon which

24  plaintiff relies.  If the court determines that plaintiff has failed to exhaust, dismissal without

25  prejudice is the appropriate remedy for non-exhaustion of administrative remedies.  Wyatt v.

26  Terhune, 315 F.3d at 1120.42

11

1    *PLRA Requirements*

2           The Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a) provides that,

3    "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any

4    other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until

5    such administrative remedies as are available are exhausted."  Inmates seeking injunctive relief

6    must exhaust administrative remedies.  Rumbles v. Hill, 182 F.3d 1064 (9th Cir. 1999).   In

7    Booth v. Churner, 532 U.S. 731,121 S. Ct. 1819 (2001), the Supreme Court held that inmates

8    must exhaust administrative remedies, regardless of the relief offered through administrative

9    procedures.  532 U.S. at 741, 121 S. Ct. at 1825.  Therefore, inmates seeking money damages

10   must also completely exhaust their administrative remedies.  Booth v. Churner, 532 U.S. 731,

11   121 S. Ct. 1819 (inmates seeking money damages are required to exhaust administrative

12   remedies even where the grievance process does not permit awards of money damages).  42

13   U.S.C. § 1997e(a) provides that no action shall be brought with respect to prison conditions *until*

14   such administrative remedies as are available are exhausted.  McKinney v. Carey, 311 F.3d 1198,

15   1199 (9th Cir. 2002) ("a prisoner does not comply" the requirement of § 1997(e)(a) "by

16   exhausting available remedies during the course of the litigation").

17          *Administrative Exhaustion Procedure*

18          In order for California prisoners to exhaust administrative remedies, they must

19   proceed through several levels of appeal:  1) informal resolution, 2) formal written appeal on a

20   CDC 602 inmate appeal form, 3) second level appeal to the institution head or designee, and 4)

21   third level appeal to the Director of the California Department of Corrections.  Barry v. Ratelle,

22   985 F. Supp. 1235, 1237 (S.D. Cal. 1997) (citing Cal. Code Regs. tit. 15, § 3084.5).  A final

23   decision from the Director's level of review satisfies the exhaustion requirement.  Id. at 1237-38.

24          *Argument*

25          Defendants contend that plaintiff did not exhaust his administrative remedies with

26   respect to his claims related to defendant Sandy's having ordered defendant Mabon (appeal log #

04-00776) to confiscate his personal property because it did not receive a director's level decision until August 24, 2004.  MTD, p. 6, citing Chief of Inmate Appeals Grannis Declaration, ¶ 7and Exhibit 2.  Plaintiff's claims with respect to defendants Justin and Brown arose as a result of filing this grievance and thus the allegations herein could not have been exhausted.  MTD, p. 7.  The court also notes that within the amended complaint, plaintiff alleges misconduct by Brown dating from July 2004, a date which is beyond the date of the filing of this action. Plaintiff's claims as to defendants Sandy and Hughes, alleging retaliation for plaintiff having filed prior appeals, about Hughes' release of sensitive information re: plaintiff and for his placement in ad seg, with attachments naming Rodriguez, Johns and Hickman and requesting an investigation of Hughes, Rodriguez and Brown, were exhausted in appeal log # 04-01562, initially filed on May 17, 2004 (the same month this complaint was originally filed) and not exhausted to the third level until November 19, 2004.  Opp., p. 7, Grannis Dec., ¶¶ 7, 10, Exh. 3.

Plaintiff's appeal log # 04-02489, wherein plaintiff claims that defendant Sandy improperly altered a CDC-115 and he was improperly held in ad-seg was not exhausted until April 11, 2005.  Opp,. P. 8, Grannis Dec., ¶7, Exh. 4.  The court notes that this inmate grievance was not dated by plaintiff as filed until August 5, 2004, three months after the instant complaint was filed.

In appeal log # 04-01271, plaintiff claims that defendants Hughes and Rodriguez denied him family visiting privileges and affixed an "R suffix" to his custody designation.  Opp., p. 9, defendant Cervantes' Dec., Exh. 8.  Plaintiff's first level appeal was dated April 12, 2004, and the second level response dated July 22, 2004.  The appeal did not progress beyond the second level response, and in any event, even that response occurred beyond the May 7, 2004 filing date of this action.  However, defendants' Exh. 1 sets forth that plaintiff's claim with respect to defendant Hughes having wrongly denied him family visits and having wrongly ascribed an "R"-suffix custody designation to his file was plainly exhausted by a third level decision on May 3, 2004, appeal log # 03-03168, several days before this action was filed.

1    Plaintiff does not directly dispute the dates of exhaustion but rather claims that

2 when he filed his initial "Citizen's Complaint," he did not intend at that time to file a civil rights

3 action, rather, the court construed it as such; he filed the complaint because he was in fear for his

4 safety and had been targeted by numerous threats, had had his personal property confiscated,

5 including his blood pressure medications, had had his family visits stopped, had been labeled a

6 rapist unbeknownst to him and left on the yard at the mercy of any inmate with this information

7 (after which he was removed to ad seg which had a yard with more dangerous inmates).  Opp.,

8 pp. 14-15.

9    Plaintiff's claims of having been frustrated in his efforts to process his grievance

10 go to an appeal which is not under consideration as the court has found his claims with respect to

11 that grievance must be dismissed.  Plaintiff seeks to be relieved of the requirement to exhaust all

12 of his administrative remedies before proceeding in this action by, on the one hand claiming that

13 it was the court who initially filed his "citizen's complaint" as a civil rights action, but on the

14 other, stating that the court's construing it as such, on May 7, 2004, four days after he was placed

15 in ad seg, may have saved his life.  Opp., p. 15.  Plaintiff strongly suggests that saving his life

16 constitutes "good cause" to excuse the failure to exhaust and that when he "refiled" his case in

17 October, 2004, "he had <u>no</u> idea what to do regarding the court's filing of the citizen's complaint

18 as a 42 U.S.C. § 1983 civil complaint." [Emphasis in original].  Plaintiff claims that he intended

19 to file a 42 U.S.C. § 1983 action at some point, but not at the time that he filed his "citizen's

20 complaint."  Opp., p. 11.  He avers that he should not be held to the same technical standards as a

21 litigant with counsel, citing, inter alia, <u>Corjasso v. Ayers</u>, 278 F.3d 874, 878 (9th Cir. 2002).

22 Opp., p. 12.  Plaintiff argues that while he should not be "punished" for the court's having "filed"

23 his case on May 7, 2004, he is "exceptionally grateful to that judge" for doing so.  Opp., p. 16.

24 <u>Discussion</u>

25    In <u>McCray v. Williams</u>, 357 F. Supp.2d 774, 779 & n. 1 (D. Del. 2005), wherein

26 the inmate plaintiff alleged a medical emergency in a § 1983 action and sought relief from the

1    requirement of exhausting administrative remedies prior to bringing his federal court action, the

2    court noted that it could find "no caselaw supporting the proposition that exceptions should be

3    made based upon the nature of the complaint."   Neither can this court uncover an emergency

4    exception for safety reasons, even assuming such an exigency existed, for plaintiff's having filed

5    this action prematurely with respect to certain of his claims.  Plaintiff does not explain how the

6    court could have construed his filing of a "citizen's complaint" as anything other than a civil

7    rights action.[2]

8         Plaintiff has made much of his having apparently successfully prosecuted at least

9    two cases against prison officials; in light of his experience in litigating his prior actions it

10   appears disingenuous when he claims that he did not understand how to proceed; as an example,

11   he could have sought voluntary dismissal of the initial action, filing his action once all the claims

12   herein were appropriately administratively exhausted, or at least represented herein that as to

13   such claims (other than with respect to the claim over which this court has no jurisdiction), he

14   had made every effort to do so and was thwarted from completing the grievance process by

15   prison officials.  See Ngo v. Woodford, 403 F.3d 620, 631 (9th Cir 2005) (cert. granted by 126 S.

16   Ct. 647 (Nov. 14, 2005) (plaintiff has exhausted his available administrative remedies available

17   under the PLRA when he has completed all avenues of administrative review available to him; if

18   administrative appeal deemed time-barred, no further level of appeal remained in internal appeals

19   process; PLRA does not bar subsequent judicial consideration of exhausted administrative appeal

20   denied on state procedural grounds).

21        Plaintiff's reliance on Corjasso, supra, 278 F.3d at 878, is ill-placed because that

22   case involved a pro se habeas petitioner that a Ninth Circuit panel found should not have been

23   prejudiced for a putative clerical-level error by using "a whited out cover sheet from the wrong

24

25        [2]  Plaintiff does not allege that CDC regulations offer no avenues for the pursuit of
     emergency grievances.  If such a situation existed, i.e., a bona fide emergency with no ability to
     seek expedited administrative review, the court might revisit the issue of whether an emergency
26   complaint could be filed prior to the exhaustion of administrative remedies.

district."   In the instant case, plaintiff seeks to be excused from administrative exhaustion

requirements designed specifically for prisoner pro se litigants to allow prison officials adequate

notice and opportunity to address prisoner grievances prior to proceeding in federal court.

Plaintiff's claims as to defendants Hickman, Brown, Johns, Rodriguez, Mabon

and Justin must be dismissed as unexhausted at the time plaintiff brought this action on May 7,

2004.  Plaintiff's remaining allegations concerning defendant Sandy with regard to her alleged

actions in retaliation for plaintiff's filing of inmate grievances, improperly altering a CDC-115,

i.e., those not dismissed for lack of jurisdiction, should be dismissed as not exhausted, with the

exception of plaintiff's claim that defendant Sandy retaliated against him by ordering the

confiscation of plaintiff's blood pressure medication claim which was granted at the second

level.  Plaintiff's claims of retaliation by defendant Sandy for having filed inmate grievances in

the form of releasing sensitive information and improper placement in ad seg against defendant

Hughes should also be dismissed as not exhausted when this action was filed.

On the other hand, with respect to plaintiff's allegation that defendant Sandy

ordered the confiscation of his blood pressure medication requiring that plaintiff be taken to the

clinic for a serious medical condition, defendants' own exhibits (appeal # 03-02444) indicate that

this September 2, 2003 grievance issue was exhausted by the September 13, 2003 second level

appeal response granting his request with respect to the return of his medication.  Opp., p. 7, n. 3,

Exh. 7.  That the institution apparently chose not to address plaintiff's claims of retaliation by

defendant Sandy by this alleged conduct at the (second or) third level (see 11/20/03 response by

N. Grannis to appeal log no. 03-2444), which plaintiff clarified in his appeal response cannot

unfairly inure to the plaintiff.

With respect to the remaining claims, defendants do not make any argument that

plaintiff has failed to state a claim with respect to plaintiff's allegation that defendant Hughes

acted in retaliation for plaintiff's prior lawsuits and inmate grievances in wrongly ascribing the

"R suffix" custody designation to him or depriving him of family visits.

1      Inmates have a right to be free from the filing of false disciplinary charges in

2 retaliation for the exercise of constitutionally protected rights.  Pratt v. Rowland, 65 F.3d 802,

3 807 (9th Cir. 1995); Schroeder v. McDonald, 55 F.3d 454, 461 (9th Cir. 1995); Rizzo v. Dawson,

4 778 F.2d 527, 532 (9th Cir. 1985).  The Ninth Circuit treats the right to file a prison grievance as

5 a constitutionally protected First Amendment right.  Hines v. Gomez, 108 F.3d 265 (9th Cir.

6 1997); see also Hines v. Gomez, 853 F. Supp. 329 (N.D. Cal. 1994) (finding that the right to

7 utilize a prison grievance procedure is a constitutionally protected right, cited with approval in

8 Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir. 1995)); Graham v. Henderson, 89 F.3d 75 (2nd Cir.

9 1996) (retaliation for pursing a grievance violates the right to petition government for redress of

10 grievances as guaranteed by the First and Fourteenth Amendments); Jones v. Coughlin, 45 F.3d

11 677, 679-80 (2nd Cir. 1995) (right not to be subjected to false misconduct charges as retaliation

12 for filing prison grievance); Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir. 1989) (filing

13 disciplinary actionable if done in retaliation for filing inmate grievances); Franco v. Kelly, 854

14 F.2d 584, 589 (2nd Cir. 1988) ("Intentional obstruction of a prisoner's right to seek redress of

15 grievances is precisely the sort of oppression that section 1983 is intended to remedy" (alterations

16 and citation omitted)); Cale v. Johnson, 861 F.2d 943 (6th Cir. 1988) (false disciplinary filed in

17 retaliation for complaint about food actionable).

18      In order to state a retaliation claim, a plaintiff must plead facts which suggest that

19 retaliation for the exercise of protected conduct was the "substantial" or "motivating" factor

20 behind the defendant's conduct.  See Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th

21 Cir. 1989).  The plaintiff must also plead facts which suggest an absence of legitimate

22 correctional goals for the conduct he contends was retaliatory.  Pratt at 806 (citing Rizzo at 532).

23 Verbal harassment alone is insufficient to state a claim.  See Oltarzewski v. Ruggiero, 830 F.2d

24 136, 139 (9th Cir. 1987).  However, even threats of bodily injury are insufficient to state a claim,

25 because a mere naked threat is not the equivalent of doing the act itself.  See Gaut v. Sunn, 810

26 F.2d 923, 925 (9th Cir. 1987).  Mere conclusions of hypothetical retaliation will not suffice, a

1  prisoner must "allege specific facts showing retaliation because of the exercise of the prisoner's

2  constitutional rights." Frazier v. Dubois, 922 F.2d 560, 562 (n. 1) (10th Cir. 1990).

3          This is not to say that a vexatious grievance filer can never be punished.

4  Vexatious litigants may be the subject of court discipline, and the undersigned would find it

5  incongruous that while the courts can punish vexatious filings, prison officials may not.  Indeed,

6  the right to petition for grievances is not absolutely protected; such a right has no greater

7  protection than speech in general.  Rendish v. City of Tacoma, 123 F.3d 1216 (9th Cir. 1997).  In

8  the prison context, one's free speech rights are more constricted from what they would be on the

9  outside.  O'Lone v. Estate of Shabazz, 482 U.S. 342, 107 S. Ct. 2400 (1987).  Again, plaintiff

10  must ultimately show that the actions or omissions constituting the "retaliation" served no

11  legitimate penological goal.

12          As to the defendants' argument that defendant Sandy was not deliberately

13  indifferent to plaintiff's serious medical needs by allegedly ordering a subordinate correctional

14  officer to confiscate plaintiff's blood pressure medication because, assuming a serious medical

15  need, plaintiff was taken to the clinic the same night for treatment of the condition caused

16  thereby is unavailing on this motion to dismiss.  MTD, pp. 11-12.

17          In order to state a § 1983 claim for violation of the Eighth Amendment based on

18  inadequate medical care, plaintiff must allege "acts or omissions sufficiently harmful to evidence

19  deliberate indifference to serious medical needs."  Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct.

20  285, 292 (1976).  To prevail, plaintiff must show both that his medical needs were objectively

21  serious, and that defendants possessed a sufficiently culpable state of mind.  Wilson v. Seiter,

22  501 U.S. 294, 299, 111 S. Ct. 2321, 2324 (1991); McKinney v. Anderson, 959 F.2d 853 (9th Cir.

23  1992) (on remand).  The requisite state of mind for a medical claim is "deliberate indifference."

24  Hudson v. McMillian, 503 U.S. 1, 4, 112 S. Ct. 995, 998 (1992).

25          A serious medical need exists if the failure to treat a prisoner's condition could

26  result in further significant injury or the unnecessary and wanton infliction of pain.  Indications

that a prisoner has a serious need for medical treatment are the following:  the existence of an

injury that a reasonable doctor or patient would find important and worthy of comment or

treatment; the presence of a medical condition that significantly affects an individual's daily

activities; or the existence of chronic and substantial pain.  See, e.g., Wood v. Housewright, 900

F. 2d 1332, 1337-41 (9th Cir. 1990) (citing cases); Hunt v. Dental Dept., 865 F.2d 198, 200-01

(9th Cir. 1989).  McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992), overruled on other

grounds, WMX Technologies v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

      In Farmer v. Brennan, 511 U.S. 825, 114 S. Ct. 1970 (1994) the Supreme Court

defined a very strict standard which a plaintiff must meet in order to establish "deliberate

indifference."  Of course, negligence is insufficient.  Farmer, 511 U.S. at 835, 114 S. Ct. at 1978.

However, even civil recklessness (failure to act in the face of an unjustifiably high risk of harm

which is so obvious that it should be known) is insufficient.  Id. at 836-37, 114 S. Ct. at 1979.

Neither is it sufficient that a reasonable person would have known of the risk or that a defendant

should have known of the risk.  Id. at 842, 114 S. Ct. at 1981.

      While it may be that plaintiff cannot establish that defendant Sandy ordered the

confiscation of his blood pressure medication or, if so, that such action was, indeed, retaliatory

and constituted deliberate indifference to a serious medical condition in the face of a summary

judgment motion, plaintiff has sufficiently alleged an Eighth Amendment violation by this

defendant's alleged retaliatory actions in removing the medicines, as well as a First Amendment

violation (retaliation).  The court will recommend denial of defendant's motion as to this claim.

      Accordingly, IT IS HEREBY RECOMMENDED that defendants' August 15,

2005 motion to dismiss be granted in part and denied in part, as follows:

      1.  Granted as to plaintiff's claims against defendants Sandy, Cervantes and

Dickinson of a due process violation related to a prison disciplinary action resulting in loss of

plaintiff's time credits and defendants Cervantes and Dickinson be dismissed from this action, as

well as plaintiff's claim for restoration of time credits;

2.   Granted on the ground that plaintiff failed to exhaust administrative remedies prior to bringing this action as to his claims against defendants Hickman, Johns, Brown, Rodriguez, Mabon, and Justin, and these defendants be dismissed from this action;

3.   Granted on the ground that plaintiff failed to exhaust administrative remedies with respect to his claims that defendant Sandy acted in retaliation for plaintiff's filing of inmate grievances and improperly altering a CDC-115;

4.   Granted for plaintiff's failure to exhaust administrative remedies with respect to defendant Hughes' having released sensitive information re: plaintiff and for his placement in ad seg in retaliation;

5. Denied as to his claim that defendant Sandy retaliated against him and was deliberately indifferent to a serious medical condition by ordering the confiscation of plaintiff's blood pressure medication medication;

6.   Denied as to his claim that defendant Hughes acted in retaliation by denying him family visits and wrongly ascribing an "R custody" suffix to his file.

7.   Defendant Sandy and Hughes be directed to file an answer to the claims as modified herein, within 30 days of the adoption of these findings and recommendations, should that occur.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, plaintiff may file written objections with the court.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections

\\\\\

\\\\\

\\\\\

\\\\\

within the specified time may waive the right to appeal the District Court's order.  Martinez v.

Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: 2/13/06

/s/ Gregory G. Hollows

_____

GREGORY G. HOLLOWS
UNITED STATES MAGISTRATE JUDGE

GGH:009
jone1933.fr