IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

LESLIE JONES,

      Plaintiff,                    Case No. 2:04-cv-01933 ALA (P)

   vs.

LIEUTENANT E. SANDY, et al.,

      Defendants.              <u>ORDER</u>

_____/

      Plaintiff Leslie Jones ("Petitioner") is proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983. Before the Court is Petitioner's "Motion Requesting Access to Trial Witnesses." (Doc. 135.)

      The trial in this action is scheduled for December 9, 2008 at 9 a.m. (Doc. 130 at 10.) On September 8, 2008, the Court granted in part Petitioner's motion for the attendance of incarcerated witnesses at trial. (Doc. 124.) The Court issued writs ad testificandum for inmate Joe M. Tyes (Doc. 132) and inmate Clifford Locklear (Doc. 133). Petitioner now claims that although he, Tyes, and Locklear are housed at California Department of Corrections and Rehabilitation ("CDCR"), CSP-Solano, Petitioner "has no way or access to these inmate witnesses" who are housed on different floors. (Doc. 135 at 1.) Petitioner also asserts that the

1  CDCR does not have a known procedure in place for interviewing incarcerated witnesses before
2  trial and that "several CDCR counselors" have told Petitioner that he can only interview Tyes
3  and Locklear pursuant to a court order (Doc. 135 at 2).
4       On November 3, 2008, the Court ordered Defendant to respond to Petitioner's motion
5  and specifically address: (1) Petitioner's contention that he has "no way or access" to inmates
6  Tyes and Locklear; (2) whether there is a CDCR procedure in place for an incarcerated *pro se*
7  plaintiff to interview incarcerated witnesses before trial; and (3) whether Petitioner can only
8  interview Tyes and Locklear pursuant to a court order.  The Court has received Defendant's
9  response (Doc. 143).  For the reasons discussed below, Petitioner's motion is DENIED.
10       I
11       The Ninth Circuit has held that an incarcerated *pro se* defendant's access to legal
12  materials and witnesses is not absolute and must be "balanced against the legitimate security
13  needs or resource constraints of the prison." *United States v. Sarno*, 73 F.3d 1470, 1491 (9th
14  Cir. 1995) (citations omitted).  While the Ninth Circuit has not expressly spoken on the issue, the
15  Court finds that balancing the prisoner's right to access and the prison's security concerns
16  applies with equal force to cases – such as this one – involving *pro se* plaintiffs.  *See*
17  *Valandingham v. Bojorquez*, 866 F.2d 1135, 1141 (9th Cir. 1989) (Plaintiff prisoner "litigating
18  *pro se* has the right to undertake the legal investigation and documentation of his claims in the
19  manner that an attorney would, *subject to the security and disciplinary requirements of a*
20  *prison*.") (emphasis added).
21       Title 15 of the California Code of Regulations sets forth CDCR regulations and provides
22  a procedure for Petitioner to access his inmate witnesses.  Pursuant to CDCR policy, inmates are
23  not allowed to travel past the boundaries of a facility without escort by authorized staff.  *See* Cal.
24  Code Reg. tit. 15 ¶ 3015(c) (2007).  Certain exceptions to this policy include instances where
25  there is an emergency situation or where the inmate is authorized to travel for purposes of a work
26  or project assignment.  *See id*.  According to T. Lewis, the Litigation Coordinator at CSP-Solano,

"there is no prison policy that addresses the ability of a *pro se* plaintiff to personally interview another inmate housed in a separate section of the same facility, for purposes of preparing for trial."[1] (T. Lewis Decl. ¶ 8.) According to T. Lewis, "[a]llowing and arranging for incarcerated plaintiffs to personally interview their inmate witnesses prior to trial poses significant and substantial burdens on CSP-Solano," including but not limited to: "(1) risking the safety and security of the institution by transferring inmates from one section and security level of the prison to another portion of the institution and allowing them to speak to one another in person for an extended period of time, possibly divulging 'hit-list,' gang-related information, or other information related to security concerns; (2) the significant drain on staff resources involved in coordinating, escorting, and supervising in-person meetings, to ensure that no contraband or unlawful information is passed from one inmate to another during the meeting; and (3) the concern for setting procedural precedence for future prisoner cases, further draining staff and prison resources." (T. Lewis Decl. ¶ 9.)

Inmates housed in separate sections of the same facility, however, may exchange written or printed material, subject to prior approval by a correctional or facility captain. *See* Cal. Code Regs. tit. 15 § 3139(b) (2007) ("Any exchange of written or printed material between inmates of separated or segregated sections of the same facility will require the prior approval of the institution head . . . ."). According to T. Lewis, Petitioner must first contact his Correctional Counselor in order to initiate a request to correspond with other inmates. (T. Lewis Decl. ¶ 5.) The Counselor will interview Petitioner, review his central file to obtain information required to complete a Request for Correspondence Approval (CDC Form 1074), and recommend approval or denial of the correspondence request. (*Id.*) Once the request is approved (which can take between two to five business days of Petitioner's initial request), Petitioner may then prepare his

---

[1] As Litigation Coordinator, T. Lewis is "responsible for coordinating litigation filed by inmates and employees at CSP-Solano, against the CDCR." (T. Lewis Decl. ¶ 2.)

inmate witnesses for trial in the form of written questions. (*Id.* ¶¶ 6, 7.)[2]  Depending on the security level and location of his inmate witnesses, Petitioner may either hand-deliver or observe an officer hand-deliver the material to his inmate witnesses ("subject to a cursory inspection by correctional staff for contraband"). (T. Lewis Decl. ¶ 6.)

The Court concludes that the CDCR policy in place providing for the exchange of written material between inmates balances the interests of Petitioner's access to inmate witnesses with the security concerns of CSP-Solano. *See Sarno*, 73 F.3d at 1491; *see also Valandingham*, 866 F.2d at 1141.

Accordingly, Petitioner's motion requesting the in-person attendance of inmate witnesses is DENIED. Given the approaching trial date of December 9, 2008, the Court expects CSP-Solano officials, including but not limited to T. Lewis, to assist Petitioner in expediting the approval process for exchanging written material between himself and his inmate witnesses in preparation for trial.

/////

DATED: November 12, 2008

                                              /s/ Arthur L. Alarcón
                                              UNITED STATES CIRCUIT JUDGE
                                              Sitting by Designation

---

[2] T. Lewis states that he is "willing to aid [Petitioner] in facilitating and expediting this approval process[.]" (T. Lewis Decl. ¶ 7.)